et al., 23659. Good morning, Your Honor. I'm Patrick Broderick for the Defendant Appellant, U.S. Bank, National Association, as trustee. Hold on a second. We bring this appeal because we believe that the district court erred for three principal reasons. First, we think that the Foreclosure Abuse Prevention Act, abbreviated FAPA, enacted by the New York legislature at the end of 2022, Section 8 of that Act does not apply retroactively. And for that reason, the discontinuances of the prior foreclosure actions operated to reset the statute of limitations. We also believe that this report erred in its analysis of our argument that if it is applied retroactively, it runs afoul of the contract clause. We also think it runs afoul of other constitutional protections afforded to my client. And third, we think the district court erred because it found that even under the law prior to the enactment of the Foreclosure Abuse Prevention Act, that this mortgage loan would have been time barred because the discontinuances were not effective. We think that the first argument is the only argument this court need reach in order to reverse the district court. So I understand that argument, but can I just say something that's puzzling, which is this debate over whether the statute of limitations has been extended or not extended assumes that, well, if you brought a foreclosure action today, would it be time barred or not time barred? And that would determine whether East Fork is entitled to quiet title. But you brought a foreclosure action, and you, in fact, obtained a judgment of foreclosure. So why isn't the argument that it's all res judicata, and you've already enforced a mortgage and obtained a judgment, and for a federal court to issue a judgment that conflicts with that judgment would violate laws of preclusion or rules of preclusion? We agree with that, Your Honor. Unfortunately, the district court opinion didn't address that point other than in a footnote and in passing. That's not clear from the record. Did you make that argument before the district court? I'm not sure that it was made, Your Honor. I can't say for certain the district court order did not think it was made. And you do say on appeal that you think that the foreclosure judgment is binding on East Fork. So it does seem like your position is that it's binding. That's right, Your Honor. We did get the district court opinion that says the parties agree that the 2016 judgment has no effect on these proceedings or something like that. Yeah, I wasn't at the district court, and we don't have a transcript of exactly what transcript. You don't even know what that means when the district court says that. Correct, Your Honor. So just to clarify your position, you don't think it's accurate that the 2016 judgment doesn't affect? No, we think it does affect, and we think that if this case would be reversed, that should be sorted out at the district court level with a full record on that issue. What should be sorted out? I'm sorry? What should be sorted out? The issue of whether or not the 2016 judgment precludes the case brought by East Fork, whether it's binding on them or not. And so we think that if the reversal of the federal district court decision here would return this case back to the district court where that issue that we're discussing now would be decided. If that issue was not raised in the district court, it's really hard to say that the district court erred in failing to consider it, correct? That's correct. And again, I don't have the transcript of what transpired with the oral argument. That's the point. That's the point. That's right. Then we would flush this out and decide the impact of that judgment. Well, I think it is a ground. I think it is a ground because it is mentioned by the district court order. And in fact, my adversary spends a lot of pages discussing the backdrop of the state court proceedings and whether his client was on notice of the judgment. That's correct. That's correct. And it would impact these proceedings for certain. Okay. Can I ask again about your point about FAPA not being retroactive? It does seem like your position is that it is retroactive to some extent, right? You wouldn't deny that if there were a pending foreclosure action right now that were voluntarily discontinued, that would not prompt a deacceleration of the loan, right? And that's retroactive in a sense because it applies to actions that were commenced before FAPA and it applies to mortgages that were signed before FAPA and so on. So that's a kind of retroactivity. But your position is that it's not extra retroactive in that it shouldn't apply to voluntary disclosures that happened way in the past that are now closed and proceedings that are ended, right? That's correct. So you're not actually saying there's no retroactivity. You're just saying that the language of it applies only to pending cases that are still open. Let me ask you about that. In your view, is it retroactive in that it applies to notes that were executed prior to the effective date of FAPA? Well, again, I'm talking about Section 8 here. Yeah. Section 8. So under Section 8, they omit the words prior action. Would it apply, Section 8, apply to a note that was executed prior to the passage of FAPA? I agree that it does. We also think there's constitutional issues with that, but yes. Let's say the day before FAPA is signed and executed into law, enacted into law, there is a note that is taken out. Your view is that that would violate the contract clause to apply FAPA to that note? No other action taken. No foreclosure action. No failure to pay. It's just the background law has changed. In your view, that violates the contract clause? It does. It does, and here's why. A mortgage allows lenders to elect to accelerate a mortgage loan, to call it all due under Paragraph 22. It has been the law in New York for a very long time that that same provision, because it's elective, allows that same lender to revoke its acceleration. That has been the law. So under the hypothetical that Your Honor presented, if someone entered into a mortgage note contract before FAPA was enacted, and in that contract, New York law applies to Paragraph 16 of the mortgage unit. New York law applies. I would argue that FAPA being enacted after that then takes away and impairs the contract right. I've read, obviously, carefully, your brief and the brief of Your Honor. McCain says it's been the law for hundreds of years and then cites a district court opinion that cites something like eight or ten state Supreme Court decisions, the lowest court, all from 2017, in support of the proposition that it's been the law for hundreds of years. Is that the proposition that you're standing behind? The proposition that we're standing behind is the discussion of the state of the law by the experts in New York law, those experts on the New York Court of Appeals. The New York Court of Appeals, which said in Engel, our court has never considered this issue. Well, they said what the state of the law was, because the state of the law was prior to it. Well, the New York Court of Appeals in Engel says that we haven't resolved the issue, but there was disagreement among the state courts, right? There was emergent disagreement. So that's kind of uncertain, although probably the New York Court of Appeals would say that their decision was more consistent with the existing law than an alternative. But I guess it's not disputed that there is a principle that an affirmative act by the lender to deaccelerate, even if it's unilateral, even if it's a unilateral act, if it's an affirmative act by the lender to deaccelerate, it would have the effect of deaccelerating the loan, right? Yes. So the question in Engel was just whether the voluntary discontinuance was an affirmative act. That's correct. So we know there is some class of unilateral actions by the lender that have always been recognized as deaccelerating the loan. Correct. So FAPA applies not just to a voluntary discontinuance, but any unilateral action by the lender, right? The Section 4 of FAPA does, yes. Section 4 does, right. So if FAPA applies retroactively, or applies to the way I was describing retroactively, applies to past actions that have already been concluded, then it would change the rights of a lender that were recognized, you know, even under New York law, right? Correct. So I guess the hypothetical is this. So if 10 years ago the lender took some unilateral action to deaccelerate a loan, and everybody understood that that deaccelerated the loan, and the borrower started making payments and so on, once FAPA was passed, it would mean that the borrower could just stop making payments because there would be no way for the lender to collect on the loan, right? Because 10 years is more than 6 years. Well, there's an argument that if you've been making payments and you've continued along and... So you think that making payments by the borrower would be an agreement that it should be deaccelerated? Why wouldn't it just reflect an agreement that the default rule of New York law is that the lender is allowed to unilaterally deaccelerate the loan, and they thought that they would have to pay? Yeah, I think that the making of payments ratifies the agreement, and I think that another foreclosure action won't be... Okay, so you're actually saying that that's not a problem. So there's actually no issue with the enforceability of the contract. That's not a problem. So what is the Contracts Clause issue? The Contracts Clause issue is that under existing New York law, a lender was able to revoke its acceleration of the loan. That's not... So as I understand, and I've been on panels and written about the Contracts Clause, that doesn't go to the fundamental ability to enforce the contract. That goes to different other issues? How does this go to the fundamental enforceability of these contracts? Well, the W.B. Worthing case, the United States Supreme Court case in 1935, involved, known as the context of the Great Depression, Arkansas passing laws to help borrowers. Extended out how you could foreclose, and stretched out how much time you had to answer the complaint. That sort of thing. And what was found is, what the United States Supreme Court was, look, there's a remedial purpose behind your legislation. You get it. However, you've impaired the value of somebody's collateral. The United States Supreme Court, in that case, found that just delaying the ability to bring a foreclosure was an impairment of the contracts. This statute doesn't delay the ability of somebody to bring a claim. Let's say that the New York State Legislature enacted, shortened the statute of limitations, said statute of limitations is now only one year. In your view, does that impair the obligation of contract? Yes, it would. So, in your view, what about if the New York State Legislature extended the statute of limitations for the lender to bring an action? Could the borrower then bring a contract clause claim and say, it's only the old statute of limitations that applies, because we fix it in time? What's the answer to that? Well, the answer to that is, yeah, borrower would have an argument, because they're... In your view, a court applying the statute of limitations to a contract action has to look to what the statute of limitations was at the time of contracting? I'm saying that you cannot alter and end the ability of a borrower to bring an action entirely, which is what this case brings. That may raise a due process issue, but how does that raise a question with respect to the expectations at the time of contracting? Because at the time of contracting, the parties in this case believe that New York law applied. They agreed to in paragraph 16 of... I'm just going to be more precise. You're saying that at the time that they executed the contract, the parties understood that the lender would have the right to unilaterally deaccelerate the loan, either by voluntary discontinuance or some other means. And so that was the understanding when they agreed to all the terms of the contract. In fact, maybe if they didn't understand that, they'd write it explicitly into the contract, but they didn't need to because that was the rule of New York law. And now it's not just that the lender doesn't have the right to deaccelerate the loan, it's also that the lender deaccelerated the loan on two prior occasions, understanding that that didn't... that that reset the statute of limitations, and now the lender's in a position where it can't enforce its contract at all. Right? So the... That's right. It's not even imperative. It's a construction of... Right. So just to go back to my earlier hypothetical about whether the borrower making payments would be in agreement. So in this case, the district court actually says the record doesn't tell us whether the owners here, the droves, started making payments again after the voluntary discontinuance. It sounds like you're saying that that actually would make a huge difference as to... as to whether it would affect... even assuming that FAPA's retroactive or whatever, that it would make a huge difference as to whether they made payments or not. Well, I think it does because FAPA's talking in terms of unilateral... Right, but you're saying that making the payments would make it not unilateral. But we don't know whether there were payments made after the voluntary discontinuances here. Well, I don't think there were because, again, the borrowers didn't appear at any of the foreclosure actions. So the borrowers have been out of the picture here for a very long time. I think the reason we got a foreclosure judgment in the state courts is there hadn't been any payments since the end of 2009. So do you think that we can assume that after the voluntary discontinuances there weren't any further payments? There were not any. But you think that that would make it not unilateral? Well, I think it would make it not unilateral. But that would make... So if the lender discontinues an action unilaterally, but then the borrower starts making payments again as if it has been deaccelerated, you would think that that was enough to get out of FAPRA, that the voluntary discontinuance would restart the statute of limitations because the borrower had effectively agreed to that. I think that's right. I think FAPRA contemplates that. So the problem here only applies to the class where the borrower says, no, I want to accelerate the loan and make all the payments right now. Or the borrower somehow avoids collection for six years. Yeah, the situation here is the borrower hasn't made a payment since 2009. Okay. Can I... Is this the same line of work? It's slightly different, so I'll wait until you... Well, let me just go back to the Mr. Gallagher point because I realize I may have misunderstood something you said. What is it that you believe is the subject of Mr. Gallagher? We believe that the judgments of my client against the borrowers in the 2016 foreclosure action... Is that the third foreclosure action? Correct. Okay. We think that's res judicata on... The one that happened after this case was initiated. Yeah. So let me ask you about that  at the oral argument, the parties also explain that the defendant filed a third foreclosure action against the borrowers in 2016. This one. Before the plaintiff acquired the property, the parties agreed that it has no effect on the instant summary judgment motions. Is that... Again, I wasn't at the district court, so I don't have the transcript there. No, I know that, but that is not... You know, I've been at that podium and I just took responsibility for whatever happened when I was the lawyer in front of the Second Circuit Court of Appeals. So we are where we are, and I appreciate you trying to do your job, but is that accurate? I have no basis for saying it's not accurate. So if that's the case, then how in the world can you say that to go back to the district court to relitigate an issue where you've already said or the parties agreed that this issue has no effect on the instant summary judgment motion? Well, because we're appealing the district court's order, and so... But you've already... You seem to have waived this argument. We did not make a big deal of this argument. No, not a big deal. You waived the argument. She says, without any objection apparently, the parties agree that it has no effect on the instant summary judgment motion. We're bound by that, Your Honor. Okay, so can I just ask what that means? So the proceedings before the district court, before FAPA was adopted, were about whether the mortgage was valid, right, or could be enforced. So the initial summary judgment briefing by the parties was about whether the judgment of foreclosure from the state court was binding on East Fork and so on. That's right. So in terms of the initial set of summary judgment motions, there would be no way to say that the 2016 proceeding had no effect on the summary judgment motion. So what the district court says in this footnote here, the parties agree that it has no... Sorry. The parties also explain that the decision about the third foreclosure action of the borrowers in 2016 before the legislative court had the property, the parties agree that it has no effect on the instant summary judgment motions. What it's saying is, those motions that are focused on the retroactivity of FAPA and so on, the 2016 judgment doesn't tell you, answer that question one way or the other. That's correct. But in terms of larger concerns, whether the judgment, whether the earlier action was binding... Excuse me for one second. I haven't finished my... Go ahead. So on the larger question about whether the 2016 judgment was binding, in fact, the parties had debated that question and that was before the district court and so the only way to understand this footnote is just that the district court was deciding the narrow question of FAPA's applicability and validity and it didn't think that the 2016 judgment answered that question. That doesn't mean that there are other issues in the case. That's right because the district court asked for additional briefing on FAPA because FAPA was brand new, the parties submitted briefs and the judge issued his decision on FAPA apart from... Do you know what the council's representation was? I gather you may not because you're not there, relating to this foreclosure action. I do not, Your Honor. Okay, thank you very much. Can I ask a question? We're talking about the contracts clause and whether there'd be a violation on the contracts clause but your primary argument is not that FAPA is necessarily unconstitutional but just on its face, the statutory text doesn't require changing the effect of a voluntary discontinuance that has happened in the past in an action that has concluded, right? Yeah, we think that if you compare section 7 with section 8 in FAPA, section... Right, so the argument is that section 8 says the voluntary discontinuance shall not waive, cancel, or whatever. We said the statute of limitations and so it says shall not and so that's perspective. And section 10 says this act shall take effect immediately and shall apply to all actions commenced in which a final judgment of foreclosure and sale has not been enforced. And you're saying, well, that means that if you have a current action now where there's a pending action, then the voluntary discontinuance of that wouldn't count and that's a time of retroactivity, as I've said before. But if the action is no longer pending, it would happen 10 years ago or something. If it's a prior action. If it's a prior action as opposed to a pending action, you're saying the statute doesn't reach that. That's right. So the constitutionality might be a reason why that interpretation might be favored, but you think that that's just the best reading of the statutory text, right? Exactly, because if you compare section 7 and section 8, section 7 does use the term prior action and yet they omit that phrase in section 8. So aren't we obligated to apply the state rules of statutory interpretation here? Yes. And if I were to look at the state rules of interpretation, one of the cases I would look at is the Valentine case, correct? That would be one of them, yes. Okay. In Valentine, does the court look to how quickly the statute is passed, whether it is in reaction to a judicial decision, whether it uses the language of effective immediately, all of those factors, and says that the statute is retroactive, correct? Some of those factors would, yes. Yes, that's right. Okay. Some of those factors would, but the state courts do say that there needs to be a clear statement by the legislature about retroactivity, right? That's exactly right. And you're actually honoring the statement about retroactivity. As I said, it does seem to me the position you're taking would be retroactive application. So actually, I don't know. There's some confusion because in response to Judge Lyman, you said maybe it wouldn't apply to a mortgage that was negotiated before FAPA. So maybe I want to clarify what your position is. So there's two available positions. There's two available, yes. And it doesn't apply retroactively at all. And therefore, any mortgage instrument that was negotiated and signed before FAPA was passed, FAPA wouldn't apply to that. Another possible understanding of Section 10, which I think is the one that you were just advancing, is that it applies to all actions that are pending. And so therefore, if there is a pending action, in that action, a voluntary discontinuance, even if it's on a mortgage that had been negotiated prior to FAPA, would not have the effect of decelerating the loan. But for those actions that are in the past and haven't been included in our loan or pending, the prior actions, as you just said, it would not apply. Is that right? I think there's two issues. One is, does the statute apply at all retroactively? The second issue is, if it does apply, if it does or doesn't, is it constitutional? And so I think I'm not... I'm asking whether it's constitutional or not, but the extent of the retroactivity. Yeah, I think the retroactivity... So my understanding of your position, which I would like to clarify, is that what Section 10 says is that if there is a pending action right now, or like on the day that FAPA is passed, even if it's concerning a mortgage that was signed before FAPA was passed, if that action is voluntarily discontinued, it would not have the effect of decelerating the loan. That would be how FAPA reads. FAPA would apply to that, yeah. And if that's the rule, you would still prevail because your case was not pending on the day that FAPA was... Correct, at least a few years ago, yeah. So maybe there's some constitutional questions about whether you could apply it to that kind of action, but it wouldn't really be relevant here because at least it wouldn't apply. That's right, that's right. All right. We'll hear from your friends on the other side. Mr. Felicien. Good morning, Your Honors. May it please the Court, Anthony Filosa, Rosenberg, Petunia Laitman on behalf of APERI, East Fork Funding, LLC. I just want to address, since the Court focused its attention during my colleague's presentation on the retroactivity of FAPA, the Court need look a little further than Section 10 of FAPA. These guideposts that the bank rely on, these maxims of statutory interpretation about whether shall connotes prospectivity or retroactivity are on the totem pole of statutory construction, the lowest rung. This Court has acknowledged, the New York Court of Appeals has acknowledged that the first stop of statutory construction is the text of the statute itself. We submit that Section 10 permits no other reasonable interpretation. Section 10 states that FAPA shall apply to all actions on which a judgment of foreclosure and sale has not been enforced. So it would be nonsensical or superfluous to interpret that language prospective only, because there would be no prospective case, there would be no case in that procedural posture. There would have been no need for the legislature. Well, why not? So if it applies to, so if in fact I bring an action for foreclosure and then subsequent to my bringing that action FAPA is passed, there is a question as to whether FAPA would apply because all the conduct that's at issue in that case occurred prior to the passage of FAPA. So if you apply FAPA to that pending action, that would be a kind of retroactivity, right? Well, and then I guess, just intuitively, isn't there a difference between these two possibilities? So one possibility is it applies to pending cases, and so that means that if a lender deaccelerates a loan after the passage of FAPA, or sorry, voluntarily discontinues the foreclosure action after the passage of FAPA, they'd know what they're doing. They'd know that the effect would not have, would not to be to deaccelerate the loan if they voluntarily discontinued. But isn't that different from applying it to actions that are way in the past and have concluded? And so if the lender voluntarily discontinued something 10 years ago on the understanding that it deaccelerated the loan, now you're just changing the effect of a judgment that had been entered and a proceeding that had been concluded. Right, but I guess the potential harsh effects, if I understand Your Honor's analogy correctly, the potential harsh effects of retroactive statute is not a cause under New York law to not apply a statute retroactively where the legislature has made it plain and clear that they intended for the statute to be retroactive. What Judge Bonacci is saying is that the action currently taken would have no prospective effect. Your point is that the statute is, as drafted, is intended to have a retroactive effect. Correct, both as a matter of text and I guess on the next rung of statutory construction, the legislative history, and the matter of leasing factors. Again, FAFSA was enacted with a sense of urgency to address the... I'm sorry, you said the text was the most important thing. So I just want to focus on the text, right? So why doesn't it give complete effect to this text? Section 10 says, this act shall take effect immediately and shall apply to all actions commencing a mortgage in which there hasn't been a final judgment of the approach. Right. Okay, so FAFSA applies to any pending action. That's open now, right? That's a kind of retroactive application. Section 8 says, the voluntary discontinuance shall not extend the statute of limitations. So if that pending action is voluntarily discontinued, it does not extend the statute of limitations, right? So everybody understands that that's the rule that would apply. I can give total effect to this language without saying, but an action that was voluntarily discontinued in 2011 and that everybody has said that where the case was closed and ended, that's done, that's res judicata, that's settled and so on, and this language doesn't apply to that. So I don't understand why... I get your arguments, you're going to make arguments of why it should apply to reopen the action from 2011, but this language doesn't require that conclusion, does it? We respectfully disagree again because... But explain to me why. Why does this entail that result? Well, because I guess there's a fairly securitous way of the legislature saying, what Your Honor is essentially saying is that this act is intended to apply to actions commenced on or after the effective date. No, I'm not saying that action depending on the effective date, right? Well, actions that have been commenced but haven't been concluded. So Your Honor just applied the language that had the legislature intended that, it would have been a much less securitous way of sending it if it could have just said actions pending on this date, and that would have connoted prospectivity without doubt. So again, I think as a matter of text... But pending actions on the effective date is a language about retroactivity. So applying a new statute to a case that's pending on its effective date, that's applying it retroactively. So like I said before, it seems to me we're debating the extent of the retroactivity, not really whether it's retroactive. I think turning even to the matter of lease in fact, is again to the extent we submit section 10 itself is clear. When you examine this in the context of the legislative history of passing the immediate wake of Engle, the sponsor's memorandum, which under New York law is entitled to substantial deference with respect to the intent of the legislature, says essentially Engle was wrong the minute it was decided. It did not accurately reflect New York law in creating a so-called mortgage banker's exception to the statute of limitations. So in conveying a sense of urgency and passing this in the immediate wake of Engle and explaining that this is remedial legislation and merely intending to clarify what pre-existing statutes already say, that the six-year statute of limitations means six years, that CPLR 201, which has been on the books since 1962, says that no court shall extend the statute of limitations, which is what the effect of the Engle decision had, was interpreting a stipulation of discontinuity. But now you're saying it actually... In fact, I mean, doesn't general obligation law 17-105 actually provide... In this instance, had it wanted to have a secure waiver? Correct. That's one of the statutes, again, that has been on the books since 1961, and that was... So now you're saying that Engle was just wrongly decided, right? And that was... You're saying that Engle conflicted with New York law, but when we decide questions of state law, we're supposed to predict what the highest court of the state would say about state law. And would the New York Court of Appeals say that Engle was inconsistent with all the laws of New York state at the time it was decided? I mean, respectfully, I believe the legislature was entitled, I guess the great office of statutes, to quote the United States Supreme Court, the great office of statutes is to correct defects in the common law. It's not uncommon for a legislature to enact in the immediate wake of a decision of a high court that they believe does not accurately reflect New York law to cure that defect, and that's exactly what they did here with Engle. Again, just addressing Judge Lyman's comment, yes, GOL 17-105 is one of the statutes clarified that was on the books since 1961 that essentially provides the exclusive means for contracting parties to extend the statute of limitations. So under those matter-of-pleasance factors, except that the court even believes that Section 10 is susceptible to doubt, we would submit that under those canons that FABA is intended to apply retroactively, and lo and behold, the... Can I just ask about the implications of that? So if, in fact, there was some kind of unilateral action by the lender that happened eight years ago, or eight years before... Right. ...before the passage of FABA, and everybody thought that that voluntarily discontinued or that decelerated the loan, the lender now is just... Whereas previously, the lender might have been subject to foreclosure, now the lender just owns the property free and clear. I think you must mean the borrower, not the lender. Oh, sorry, the borrower. Sorry, the borrower. Excuse me. If the lender took some action more than six years ago before the passage of FABA to unilaterally decelerate the loan, and everybody thought that's what happened, and we have court cases in which courts say that that is what happened, I understand that you said there's disagreement on that, but there are at least some cases in which that's what people understood. Whereas before the passage of FABA, that borrower was subject to foreclosure, after the passage of FABA, that person could just stop making payments because there's no way for the lender to foreclose, right? Well, again, but I just want to understand your honest question. I mean, that seems to be like a result-oriented way of interpreting statutes, which, again, we seem to be questioning the wisdom of this legislature here. No, I'm questioning whether your interpretation is required by the text, and one of the things we consider is constitutional avoidance when we're deciding what the proper interpretation of a text is. But I'm not even asking you to make a conclusion from this. I'm just asking, is that true? Is that what your interpretation would entail? That a pre-FABA so-called revocation or pre-FABA discontinuance is ineffective to reset the statute of limitations in a post-FABA world? Absolutely yes. So that means that there could have been some kind of action that everybody understood eight years ago to deaccelerate the loan, and now, whereas previously, the lender could have foreclosed, now the lender has no rights to the property. So FABA had the effect of just transferring ownership of property from some class of lenders to the borrowers. Not at all, not at all. Again, FABA does not create new consequences for past conduct, because again, as a legislature founded nearly... Let me answer this question. The FABA amends the CPLR. The CPLR is always understood to be governing the courts of New York. It affects the statute of limitations. Statutes of limitations are procedural. They're considered not to be substantive. Do you have a view as to whether if a lender brought suit against a borrower in a state other than New York, FABA would be enforceable, would be applied by that court? Ordinarily, courts of other states don't apply the procedural statutes of limitations of New York. That's correct, yes. I think as a matter of procedure, this is confined to New York state law. A New York state court would be applying the New York state statute of limitations as interpreted by FABA. So if a lender wanted to sue a borrower and could get jurisdiction in Connecticut or New Jersey or some other place, would these provisions apply or would that be a matter for those courts to then determine? Well, I guess under an eerie analysis, again, it turns on whether... Leave aside the federal court, I'm asking the state court. Right, it would seem that they would apply the law of the procedure of the form in that instance, Your Honor. So can I ask you about that res judicata question? So just putting aside the whole debate over FABA, even if we assume that the voluntary discontinuance in 2011 did not decelerate the loan, U.S. Bank, in fact, brought a foreclosure action and obtained a foreclosure judgment within six years of that action. So there's... And even if it hadn't been within six years, the fact is that there is a state court judgment that says that the mortgage is enforceable and they have a judgment of foreclosure. And if you prevail in this case, we're basically eviscerating that judgment. So why don't preclusion principles apply to say, well, this has been litigated already and we have to honor the prior judgment? Again, it bears emphasis that the 2016 action that the bank commenced was not against East Fork's property. It doesn't matter, you're in privity with the... No, no, that's not a... No, it's not a matter of privity. The 2016 complaint and sworn declaration submitted in the 2016 action by the bank sought foreclosure against Unit 7H, which is not East Fork's property. And I guess this... Yeah, I understand. If I may... Excuse me, counsel. But the state court, you know, granted a motion to say, well, that was an error and actually it is against this property. I understand you have arguments for why the state court shouldn't have done that. Right. But don't we respect the earlier judgment of a separate court that decided it differently than you would like? No. I mean, shouldn't your recourse be to go to that court and say you were wrong? Rooker-Feldman does apply, right, in this instance, because you're not appealing a state court judgment. State court judgment didn't precede your action. Your action... Well, of course Rooker-Feldman doesn't apply. Correct, Rooker-Feldman doesn't apply because under Exxon Mobil, our action, the federal court action, was commenced before the entry of any judgment of foreclosure, which purported to affect our property. I never mentioned Rooker-Feldman. But I think the chronology is important here. So there was a state court judgment that was issued before the judgment in this case. Why isn't the federal court required to respect a prior judgment on the same issue between the parties? Because the bank sought in sworn declarations and obtained a judgment of foreclosure against Unit 7H, which is not East Fork's property. So we have no quarrel with them foreclosing against Unit 7H in 2019. So here the chronology is very important. So from 16 to 19, and critically, prior to our... If I may, prior to our acquisition of the deed... But the state court then grants the motion to correct the judgment to send a bus to this property in February 2020. You don't have a judgment in the federal court at that point. So there is a state court judgment that says the U.S. Bank has a judgment of foreclosure against this property that was subject to the federal court action. So for four distinct reasons, we are not bound by the amended non-protunct JFS in the state court action. I'd like to hear those four reasons. Right. So it violates East Fork's due process because, again, we commenced this action in 2020. At all times prior to 2020, U.S. Bank and the state court maintained in sworn declarations that the mortgage was intended to encumber and the action was intended to foreclose Unit 7H, which is not East Fork's property. Citations to the record at Appendix 1382 to 1385. They sought reformation of the mortgage in their 2016 complaint to foreclose and to describe Unit 7H. That's at paragraphs 22 to 24, 28, 30, and 33. They sought indexing of the mortgage to be recorded against Unit 7H. That's, again, at Appendix 1382 to 1385. They filed a notice of pendency in that third foreclosure action, not against East Fork's property, against Unit 7H. We are not joined to the third foreclosure action. East Fork has never made a party to that action. Lo and behold, in 2020, we commenced the quiet title action. Two years later, the bank goes back to the state court without notice to the federal court, without notice to East Fork, makes a motion to nunk-pro-tunk, amend the judgment to now cover East Fork's property without notice to East Fork. So as a matter of due process, how could you have a judgment that purports to foreclose East Fork's property without giving them notice and an opportunity to be heard? Second, if I may. So as a matter of due process... May I? I'm sorry. I'll defer to the chief. You can go through all the four reasons. Let me just ask a question about that reason. So you're saying that we should conclude that the state court judgment was invalid, right? But if it were a valid judgment, there would be a registry-type effect, right? Well, that's simply your Honor's hypothetical effect. The question, had we had notice and the opportunity to be heard and we lost... No, I did. I'm just trying to get... Sure. So as a matter of state law, a court lacks subject-matter jurisdiction post-judgment to make a substantive amendment to the judgment. And we briefed this matter at Wells Fargo v. Pedeswick, 115 Appellate Division 3rd, 207. The 2014 case, once you've entered a judgment in state court, the court's ability to affect that judgment is really relegated to ministerial or clerical errors. You cannot take a judgment of foreclosure which purports to foreclose against Unit 7H and then after the fact say, no, it's foreclosing another person's property. What are the other reasons? Frankly, the gamesmanship employed here by the bank is extrinsic fraud. We had a 2020 action where we were actively litigating the validity of the mortgage before the district court for them to go under the cover of darkness, if you will, without notifying the federal court, without notifying East Fork, when we were actively litigating the action in district court to move essentially ex parte in the state court to amend the judgment non pro tump without notifying the state court of the pendency of the federal court action is extrinsic fraud on that court. Do you have a sense of why the district court stated that the oral argument that the parties also explained, you heard that? Right. I conducted the proceedings before the district court. I argued the motion before Judge Donnelly on the district court. It bears emphasis. Briefing had closed prior to FAPA. So we actively litigated these issues with respect to the efficacy of the amended judgments before the district court. Summary judgment was fully briefed. Decision was still pending. FAPA is passed December 30th of 2022. We all sought leave of the court to supplement our briefing to address the applicability of FAPA. The court granted that relief. We argued the motion March of 2023. And whatever reason, the bank charted its litigation course. The transcript will reflect that the discussion, the arguments advanced by the bank, and which we had to oppose, was the constitutionality of FAPA and the applicability of FAPA to this action. So that footnote in Her Honor's decision is completely accurate. They abandoned any argument with respect to res judicata, with respect to the amended JFS. But the whole summary judgment briefing that you're saying had been closed was about whether the 2016 judgment was binding, right? Amongst all the arguments. We still had arguments with respect to statute of limitations, but obviously we couldn't brief FAPA in 2022 when FAPA didn't exist. The district court couldn't possibly have concluded that the 2016 judgment didn't affect any of the arguments before her, right? Because obviously that was the essence of the summary judgment briefing. So it must be that she didn't think it affected the FAPA question. Well, again, we were arguing the summary judgment motion. So if a party makes ten motions, and when it comes time to argue, if I stand up at this podium and I only advance two, or when it comes time to briefing, I only advance two and the court rests its decision, I guess this court can interpret, I believe Judge Donnelly's decision speaks for itself. Was race judicata argued by your adversary in the district court? It was. It was argued. Yes. All right, so we'll hear from the state. May it please the court, Mark Rude from the New York Attorney General. The Foreclosure Abuse Prevention Act is the latest of many responses by state and federal government to abuses by the mortgage lending industry arising from the mortgage foreclosure crisis. Mortgage lenders often rush to court with inadequate documentation to support their foreclosure claim and then sought to unilaterally dismiss those faulty actions later to avoid the adverse judgment and to restart the statute of limitations. Procedural tactic not afforded to any other civil litigant. As, to borrow Judge Lyman's words, you typically get one shot and then it is over. But after the New York Court of Appeals adopted a new rule approving that practice in Engle, the legislature quickly enacted FAPA to clarify that such unilateral discontinuances standing alone do not reset the statute of limitations. The legislature found that the Engle rule was inconsistent with legislative intent because it thwarted the long-recognized public interest furthered by the statute of limitations, which are vital to the public welfare, providing security and stability for human affairs. As I understand it from the response to the question about the contract clause argument, the U.S. Bank contends that a mortgage entered into the day before FAPA went into effect, that would be December 29, 2023, would not be subject to FAPA and that they could open and close the statute of limitations for the next 36 years, that is until 2059. The state of New York has a fundamental interest in finality and repose. You're right now that Mr. Broderick said that at one time, but then I said, well, to clarify what the language of Section 10 entails, and he agreed that his position was that what that language entails is that it applies to pending actions, which is a kind of retroactivity. So if it applies to a pending action, that means that if we have an action pending on the effective date of FAPA, then FAPA would apply, even if the mortgage had been signed prior to the effective date. And so that means that if somebody does a voluntary discontinuance of that action, it would not deaccelerate the loan. That would have retroactive effects, but why does this language require you to conclude not only that it applies to pending actions, but also to a prior action that has been dismissed and everybody has moved on from it for a number of years and you have to now reinterpret the effect of an earlier judgment that has been closed? Your Honor, because we're talking about the current pending action, and just to make things crystal clear, we're talking about page 651 in the appendix. We're not arguing that the prior foreclosure action was not closed, not trying to reopen the judgment. We're talking about U.S. Bank using the affirmation on page 651 as a defense in this pending action. And that is exactly what section 10 applies to. And if there were any doubts... No, section 10 says that the action will take effect immediately and apply to pending actions. And section 8 says the voluntary discontinuance shall not. So it's retroactive insofar as it applies to all pending actions. And so then I apply section 8 even to a pending action where the mortgage has been negotiated even before FAPA. And it means that if there's a voluntary discontinuance, it doesn't have this effect. I don't see why that language requires me to then say that even a voluntary discontinuance that has occurred 13 years ago is going to have a different effect than the court understood at the time. Well, I didn't answer your question, but first I'll say that if there's any doubt, the court should certify the question to the New York Court of Appeals. That is my question. To the extent that there's any disagreement, the New York Court of Appeals could, with the help of the legislative enactment and the language, definitively answer some of these questions, correct? That is correct. We think the answer is clear, and the appellate division, the first department in the Genvizi case, gave thorough reasoning supporting our position. It would certainly be incongruous if the Second Circuit adopted a different interpretation than the appellate division. It would result in a flood of cases coming to us. Right, it would certainly encourage forum shopping. It's true that the appellate division has that one decision, but then the trial courts in New York are divided on this question, right? It does seem like there's a debate in the New York state courts, right? Well, the trial courts have no precedential effect. They don't have a precedential effect, and the appellate division is only within the second department or whatever. Don't you think that the court that decided Engel might think differently than for the appellate division? I'm not sure I'm confident that the New York Court of Appeals is going to say that this applies retroactively to the extent that... Maybe, in fact, they would be particularly incentive because having been scolded before, they... Well, maybe. No, either way. I can't conclude that from the second department. We could certainly welcome your certification if you have doubts, but it's not just... Genvizi is from the first department, has thorough reasoning explaining the statutory construction. The second department... The first department is not about Section 8, right? I mean, I understand maybe that... It's about Section 10, which applies to... It should apply... You know, you'd think that it would apply to all provisions, but it's not necessarily. It might present different issues. Again, those arguments could be made to the New York Court of Appeals, and they will ultimately resolve that question, not this court. But I also want to go back. The second department has applied FAFA retroactively without much analysis, implicitly concluding that the text is clear. I argued in a case in the third department on January 16th, Deutsche Bank. The DeLuca decision is pending on that case. The third? Third department. That's correct. I'm not aware of any cases in the fourth department. But this issue is percolating its way through New York courts. The appellate division of precedential opinions have uniformly agreed with our position, and it's appropriate for the federal courts, under principles of federalism, to give some deference and not to jump out ahead of the New York Court of Appeals. Would that issue dispose of this appeal? I understand that there's many other issues in this appeal, but Judge Donnelly ruled on this issue and found it sufficient to dispose of it. What about this resume question? So if there is, in fact, a state court judgment of foreclosure that U.S. Bank obtained, shouldn't the federal courts have to respect that judgment? Yes, I will say that the way FAFA is phrased is that it applies to cases where judgments have not been enforced. The typical way that this has been addressed is that litigants with unenforced judgments have sought to vacate the judgments in the state courts. Well, that actually means that each court could go to the state court that issued the judgment of foreclosure and say, you should reconsider because we should have the benefit of FAFA, right? But they certainly can do that. But if the state court changes its judgment, I mean, it's not an application of FAFA, it's just regular preclusion principles. Like, should the federal courts issue a judgment that nullifies an earlier issue judgment by another court between the same parties on the same issue? Right, I mean that it's the same parties. In general, yes, I have to confess that as to the particular facts of this case, based on the footnote in the district court opinion that this was not at issue, this was not something that was considered. If this court has sort of questions about this in terms of the state law... Initially, based on your review, there was an argument made that was then, in effect, waived. The district court footnote that your honors have been talking about said that the parties agreed that that proceeding had no effect. So you understand that there are a number of different issues and you're maybe in a difficult position. So the interfere position in one sense, but you're here to defend FAFA. That's correct. And defend the retroactive nature of FAFA. And we don't take a position on the many other non-FAFA-related parties. So with respect to the constitutionality under the Contracts Clause, could you just give us that? Yes, I'm happy to talk about the Contracts Clause. I don't think there's any dispute that the plain text of the party's mortgage agreement does not contain any contractual provision governing either acceleration or resetting the statute of limitations. And it's been settled law for many years that if a party wants to reset the statute of limitations on mortgage foreclosure action, there's a statutory mechanism for doing so, New York's General Obligations Law 17-105. What the banks did here was they took a chance... The position of the New York Court of Appeals is that it was long and well established that even if you're not formally resetting the statute of limitations, if you take some affirmative act to deaccelerate the loan, you're just deaccelerating the loan. That has the consequence of resetting the statute of limitations because it no longer accelerates the loan. But even apart from whether a voluntary discontinuance is an affirmative act, there's no dispute that there was some class of affirmative act that a lender could take that would deaccelerate the loan, right? Well, the only Court of Appeals decision that I understand being referred to is the Kilpatrick decision from 1905. And Kilpatrick, the very first sentence, I believe, is, this case presents a very narrow question. And what Kilpatrick concerned was a situation where there was a two-year mortgage loan and there was four interest payments. And what happened when the first interest payment was missed? And the lender said, I'm going to foreclose. The borrower said, okay, I'm going to get another loan. I'm going to repay you back in full. Then the lender changed their mind. They're like, no, we're revoking our acceleration. We want you to, if you're going to prepay, you have to pay the $1,000 penalty. And the borrower said, okay, I'm stuck between a rock and a hard place. I took out this other loan and now I have to pay you the $1,000 penalty. Otherwise, I have these two loans. And so what the Court of Appeals said is that that $1,000 payment was under duress, that the lender could not revoke when the borrower had relied on the acceleration. So that was the narrow question that was decided in Kilpatrick. And how we get from that to a century-old legal tradition, I don't know. It's not just that the New York Court of Appeals decided Engle and Engle was a dramatic change in the law, but the New York Court of Appeals just had no understanding of the whole history of New York law in this area. The idea that an affirmative act by the lender deaccelerates the loan is just a native thing that might have appeared in Engle? No, Engle said that no clear rule had developed as to the effect of unilateral continuous. What Engle said is that it's well established that an affirmative act by the lender to deaccelerate the loan would deaccelerate the loan. And the question that it considered open was whether voluntary discontinuance of a foreclosure action was such an affirmative act. So you're saying even the idea that an affirmative act would deaccelerate the loan was not actually established. Is that your position? In court of appeals precedent, there was appellate division precedent that held that a clear and unambiguous act and how unilateral discontinuance could be considered a clear and unambiguous revocation. I don't understand. But FAPA doesn't apply just to voluntary discontinuance of a foreclosure action. It applies to any unilateral act by the lender. So if it had been well established that there was some class of affirmative act by the lender that could deaccelerate a loan, and after FAPA that no longer exists, doesn't that change the rights of the parties understood the rights to be allocated when they negotiated and signed the mortgage? Well, to answer your question, but first I'd like to note that there are hundreds of these FAPA cases that are as applied challenges. Whatever hypotheticals your honor can imagine, there's a case where that issue can be resolved. And there's no need to reach out in this case to resolve hypotheticals that are not presented. But turning to your hypothetical about some other class of revocation, as to whether there is an implied, I think what your honor is getting at is whether there's an implied term in the contract, and how a term can be implied based on a common law rule adopted by the appellate division that could always be reversed by the Court of Appeals. That is not even binding on this court, as your honor has noted. The appellate division precedent does not prevent this court from reaching a contrary conclusion. So how there could be an implied contractual term or vested right based on. I mean, parties negotiate against the backdrop of what's going to be enforced legally. They like apply, they'll let me choose laws to apply and so on. And I guess it's true that in any case, the New York Court of Appeals can decide, we're just going to change the law really dramatically. If the parties chose New York law, you wouldn't decline to apply New York law to the contract on the ground that, well, tomorrow the New York Court of Appeals could decide that New Jersey law applies throughout New York state. Just because they have the ability to do that doesn't mean that it's not a term of the contract that they understood the substantive provisions of New York law to govern the terms. Go ahead. So I think what the Supreme Court said in General Motors Court was that litigants took their chances with their interpretation of the law and having come out on the wrong side of it and having lost a political skirmish in the legislature. That does not give rise to a constitutional cause of action or a vested right. Can I understand a little bit better the effect of FAPA, let's say today, if somebody misses a payment? A foreclosure action is brought. In that instance, and let's assume further that the lender then decides to voluntarily discontinue. The borrower misses a payment in the future. The lender still can sue the borrower for missing that payment, right? It's just subject to the six-year statute of limitations? That's correct, Your Honor. It's subject to the six-year statute of limitations. But I think the point is once the loan has been accelerated, the full balance is due. And unless there is a valid deacceleration pursuant to General Obligations Law 17-105, there are no future payments because the balance is already due. Got it. OK. So let me just finish on that. It's discontinued. Can the borrower then, let's say, again, this happened that FAPA has passed the day after a voluntary discontinuance. Can the lender then bring a new lawsuit based upon the same facts? That sort of turns on, there's a provision in the CTLR, the 203A, that's also implicated in some other FAPA cases that can even extend the statute of limitations six months. So if an action is discontinued and there's a laundry list of reasons why, you have six months to go back to court, even if the statute of limitations hasn't expired. And that goes back to the old- And let's assume the statute of limitations has not expired. Can the borrower then still bring a lawsuit based upon that same mispayment? That's correct, because there wouldn't be any res judicata effect, I understand, from the dismissal. But if it was dismissed on the merits- I'm just asking if it's voluntary discontinuance. And so in that instance, the borrower effectively, the effect of FAPA is effectively to shorten the statute of limitations in terms of the borrower being able to bring a claim. Is that clear or not? I mean, it has an effect on the statute of limitations. The statute of limitations remains secure. It's a clarifying effect. It's a clarifying effect on when the accrual occurs. What it does is it denies the length of the ability to accelerate the loan, right? And the reason the statute of limitations exists is because the loan has been accelerated. They don't have the ability to deaccelerate. It has nothing to do with their ability to deaccelerate. It has to do with the effect of a purported deacceleration on the statute of limitations. And as I discussed with the Kilpatrick case, there are independent reasons why a borrower might want to stand on an acceleration. So a lot of this argument is conflating statute of limitations and acceleration, but they're distinct. So the New York Bureau of Appeals didn't think they were distinct, but FAPA, I guess, makes them distinct. So your position is that now the lender can deaccelerate the loan, but the statute of limitations would still kick in from the time it commenced for foreclosure action. I want to clarify one thing about angle, which I would direct the court to. Answer that question. OK. I'm sorry. So your position is after FAPA, the lender can unilaterally deaccelerate the loan, but the statute of limitations would still kick in from the date that it commenced the foreclosure action. So the effect of FAPA is to decouple acceleration from the statute of limitations. Is that a thing? That assumes that they were coupled, but it does clarify that they are distinct. The baseline, at least as of angle, was that they were coupled, right? Not from the Kilpatrick decision, which had nothing to do with the statute of limitations. There was appellate division precedent to that effect, yes. But that's- Really, it's just a clarification. As I understand it, governing when the parties can cancel resets the statute of limitations. That is correct. That is correct. And I would just emphasize that the clarification point goes to the statutory interpretation question. It's not even necessary to dispose of the constitutional arguments. I didn't even talk much about it, but I think it's apparent that there was a reasonable purpose. Even if it impaired a contractual right, a reasonable purpose related to a legitimate and important public interest. You mentioned a reasonable way of achieving that purpose. That's right. But for terms of reasonable ways, the courts do not second-guess the judgment of the people's elected representatives. Well, yeah, we don't second-guess them on the question of whether- Well, actually, I don't know. Maybe we do, to some extent, because you have to decide whether there is a legitimate and important interest in some way. But assuming there is, we do always address questions of whether it's tailored to that interest and whether you're pursuing it and not being overly broad-minded. But we do entertain those kinds of questions. So my question is this. So if you could achieve the purpose, given what I was describing as one option for retroactivity, which is that it applies to pending cases, but not to prior cases, why is it reasonable to also reach the class of cases where it will be a surprise to the parties that actually the borrower now holds the place free and clear because everybody thought that the loan had been de-accelerated and that had the effect of extended sexual limitation? Well, we dispute that there's any surprise. But to answer your question- There's no people in that category? I mean, even when we have the cases that go either way in the trial courts of the United States, it means that there are some cases where courts actually got involved and said, no, the loan was de-accelerated by the unilateral action of the lender and that has the effect of extended sexual limitation. There is some class of cases where everybody understood that to be what happened in their case. Well, Engle- That happened more than six years ago. Now those expectations are unsettled because now the borrower just owns the thing free and clear. There's no way to- Well, Engle said that no clear rule had developed. So particularly at the time Your Honor is talking about, there was not a clear rule. But also to go to the remedial purpose of the legislation. Again, this arose from the mortgage foreclosure crisis. In this case, we're talking about a default in 2010, 2009. That's not unusual. That's when a lot of these cases are from. And the banks filed an action. They had shoddy paperwork, knew that they would get a bad judgment, withdrew it. We'll file it again. They file it again. They withdrew it again. And at some point, there has to be finality and repose. And it also reminds me it's accrual. Principles relating to accrual. That is correct. So there's plainly a reasonable response to a legitimate and public important interest. Nobody denies that that's now the rule in New York State. The only question is whether you can go back in time and change the effect of the voluntary discontinuance that happened in the past. Well, I'm explaining that the statute should be interpreted and was meant that way because the remedial purpose arises from these classifications. I have an argument. I guess I just want to ask one more thing, which is you said a moment ago that given all these hypotheticals, if there are problems about impairing certain contracts in certain scenarios, there will be other cases where those scenarios are presented. Is that the way we should think about a contract clause claim? Is it always as applied to a particular contract? Or because the question is whether the state has acted reasonably in impairing obligation of contracts, we should think about all the implications of the rule the state has imposed. Well, I think it's somewhere in the middle because there's classes of cases. But FAPA also has many provisions that are not at issue here. So there's the Engle cases. There's the 203A, the Savings Clause cases. FAPA has effect on a few different provisions. So it should certainly be limited. The analysis is limited to an Engle-type case. So would it be possible, then, that Section 8 applies retroactively, but maybe Section 4 does not? Is that a possible outcome, do you think? Well, I don't think... I know you said it's not your position, but you're saying... Right. We shouldn't think about the other provisions of FAPA applying retroactively because maybe you should go provision by provision. Is that how you think we should think about it? Well, I think 8 and 4 go together. 8 and 4 is harmonizing changes in the CPLR to reflect Section 8. So I think Section 8, 4, 8, and 10 go together. Thank you. Thank you very much. We've cut you off past your time, but thank you for your patience. And you still have time for a rebuttal. Yes, a very great rebuttal. Thank you. Thank you. On that last point about whether or not certain provisions within FAPA can be interpreted differently with respect to retroactivity, the New York Court of Appeals in the Virginia Metropolitan case examined that exact issue. They looked at different provisions and said... Would you agree that there's some disagreement or some ambiguity about this certification as to this issue would be appropriate? We would agree with... I think... I would say that the Court of Appeals is going to speak to this issue sooner or later. Correct. Yeah. Okay. So that's for sure. And by the way, and I think that the State was not really in a position to respond fully to this. There are other issues, but why isn't this at some level... I understand you've got these constitutional issues that may not be disposed of, but usually when we certify, we tell the New York Court of Appeals this will help us determine one way or the other. This will be dispositive. And with respect to what's before us, which is the district court's judgment, isn't this at some level, this question of retroactivity, at some level a question that could help us determine whether to affirm or to vacate? Yeah, I think it could, for sure. Well, thank you very much. Thank you.